STATE of Missouri, Respondent,

v.

Charles RODEBUSH, Appellant.

No. 56677.

Supreme Court of Missouri,
Division No. 2.

Dec. 11, 1972.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Vernie R. Crandall, Frieze & Crandall, Carthage, for appellant.

RICHARD P. SPRINKLE, Special Judge.

The defendant, one Charles Rodebush, was by Information charged with robbery first degree. At trial, he was convicted by a jury and his punishment assessed at five years' imprisonment. Defendant's motion for new trial was overruled and he presents this appeal.

Defendant was charged along with one David Butler with the robbery of Robert Wicks on the night of April 2, 1970. The incident took place on Highway 96 in Jasper County, Missouri. Personalized, biographical details are not essential to the determination of the issues raised on appeal.

Wicks, an auditor, was in the Joplin, Missouri area on business for his employer. Prior to arriving in Joplin, Wicks had secured a two hundred dollar ($200.00) cash expense advance, which sum was made up of new twenty-dollar ($20.00) bills. Because the bills were new, Wicks had noted their sequential numbering.

On April 2, 1970, shortly after 10:00 p. m., Wicks, while social venturing in the unfamiliar area of Highway 96, near its intersection with Road "Z", realized his driving error and attempted to turn around on the highway. In doing so, the right front wheel of his auto became inextricably lodged in a hole. At this point Wicks encountered defendant and his companion, who drove by in a white Chevrolet station wagon and stopped. Wicks approached the white Chevrolet which defendant was driving when *they* said, "Give us some money and we will get you out." Frightened, Wicks backed off and was accosted by defendant's companion who knocked him down. Then *they* told Wicks to get inside and start up his car, which he did. With the headlights on, fully illuminating them, the defendant and his companion, Butler, lifted the right front of the car and it came out of the hole. Butler then approached Wicks and said, "Give me your money." Wicks, on direct testimony, stat-

ed that defendant was then five to six feet away from him and in front of his car. Wicks surrendered his money (new twenty-dollar bills) after which Butler said, "This better be all you have got, because we could kill you, boy, and leave you laying out here in the field somewhere, they would never find you." The defendant had approached closer and was almost directly behind Butler. Defendant said to Butler, "Hurry up, let's go." Butler then said, "I am doing right by you, boy." He repeated his earlier threat and thereafter returned two of the bills to Wicks. The defendant, starting back toward his vehicle, said, "Come on, let's go." The threat was repeated again by Butler and Wicks was told to get into his car and leave, which he did. In driving away Wicks took note of some objects and their arrangement in the back of the defendant's station wagon. These items were later identified as being in defendant's auto.

The defendant, arrested on other charges the following day, had in his possession several of the bills which had been taken from Wicks.

Defendant in his appeal raises three issues of error. Two will be dealt with here. The first claimed trial error alleges that the State's case did not sustain the charge of first degree robbery, but at the most, accessory after the fact. The second error lay in the failure of the trial court to permit defense counsel to introduce excerpts of tape recordings taken at preliminary hearing dealing with inconsistencies or denials in the testimony of the complaining witness, Wicks.

During the course of trial, it became apparent that defense counsel had available a recording of Wicks' testimony given some seven months earlier at the preliminary hearing.

In an effort to utilize this record, defense counsel, during cross-examination of Wicks, laid the foundation for its introduction by asking Wicks on numerous occasions if he did not give certain quoted testimony at the earlier preliminary hearing. Wicks frequently parried these confrontations of his earlier evidence by stating, "I don't know exactly what I said at that time."

On one occasion there was an outright denial of his earlier testimony. After a number of questions dealing with Wicks' recollection of his preliminary evidence, he confessed, "Sir, you have the tape recording of it. I have to rely on my memory. The tape recording is far superior than relying on my memory."

Fortified with these uncertainties and the denial, defense counsel, during the defendant's case, made an offer of proof with regard to these matters. The record discloses some sixteen offers of specific bits of testimony. Many of these are overlapping and repetitious. Without any recorded objection to these offers by the prosecution, the trial court ruled that the offers were not proper because they did not contradict or impeach the testimony of Wicks given at trial on either direct or cross-examination. In most instances, the trial court was correct. However, in two essential areas and in one quasi-critical area, the testimony of Wicks was in conflict and the jury should have had the opportunity to consider those discrepancies and evaluate the evidence.

This court has frequently held that a witness may be impeached by showing he made a prior inconsistent statement as to a material matter. State v. Williams, Mo., 473 S.W.2d 388, 390; State v. Banks, Mo., 468 S.W.2d 623, 625; State v. Cross, Mo., 357 S.W.2d 125, 128.

The same rule would be applicable whether the prior inconsistent testimony was written or oral. State ex rel. State Highway Commission v. Davis, Mo.App., 466 S.W.2d 172, 173.

The fact that the prior evidence was committed to a sound recording would not defile its validity if properly identified. 29 Am.Jur.2d, § 436, p. 494; State v. Lusk, Mo., 452 S.W.2d 219, 224.

In four separate instances, on either direct or cross-examination, Wicks testified that when defendant and his companion, Butler, lifted his car out of the hole, its headlights were on and he could easily see and identify the defendant. When questioned on cross-examination concerning the car lights being on, defense counsel queried Wicks, "That is not what you told us at the preliminary hearing, is it?" Wicks answered, "I don't know exactly what I did say at the preliminary hearing."

The offer of testimony taken at the preliminary hearing would indicate that Wicks, when questioned about any lights around the place, stated, "The moon was out that night, that was 'the only lighting there.'"

At trial, during cross-examination, Wicks stated that when defendant and Butler first arrived at the scene, it was defendant who asked for money to get his car out of the ditch. Wicks was challenged again by defense counsel, asking if he wasn't changing his testimony from what he had said at the preliminary hearing. Wicks answered that he was telling what he could remember as best he could.

The tendered preliminary testimony would indicate that Wicks was struck by defendant's companion, Butler, without anything being said by either Butler or the defendant about money.

Further, at principal examination, Wicks stated in response to direct questions by the prosecution that after his car had been removed from the ditch, Butler said to him, "Give me your money." Contemporarily, Wicks placed the defendant immediately in front of his car, some five to six feet from Butler. Wicks did not indicate that the defendant said anything at that time. In the offered preliminary testimony Wicks indicated once that defendant was walking back to his own car remarking to Butler, "Hurry up, I want to get going." At another point he placed defendant back inside his car when Butler demanded the money from Wicks.

Coupled with these contradictory revelations were defense counsel's disclosures, on several occasions in the presence of the jury, that by referring to the preliminary recordings he was laying the basis for impeachment.

By binding standards, when reflecting on the events of the crime, the court cannot give priority consideration to overwhelming evidence showing the defendant guilty. The compulsions of shortening trials, economizing, seeking finality in criminal cases and in searching for ultimate truth are secondary. The basic consideration lies in being able to give assurance that the defendant had a fair trial—not a perfect one.

The defendant here did not have such a trial. First, the jury had been conditioned to believe that defense counsel had a tape recording of Wicks' testimony at defendant's preliminary hearing. Counsel had, from all indications, read what purported to be some of that testimony. The offer of the testimony was refused outside the hearing of the jury. Thus, with no explanation, the jury never received the formal reading of the contradictions and was free to draw any number of unfavorable conclusions. They could believe that defense counsel was bluffing and never had any recording or that he had misquoted the testimony and could not use it. In any event, those unspoken sentiments could well have been reflected in the verdict or the punishment.

Second, the State's case either succeeded or failed on the merits of Wicks' testimony. His memory, his statements and his credibility were vital considerations in the case. To remove from the jurors' determination those contradictions relating to critical issues deprived the jury of its right to judge the credibility of Wicks. It should be remembered that one basic issue of the defense dealt with showing that the defendant did not actively participate in the robbery and was disassociated from it. Eliminating Wicks' preliminary evidence which showed defendant was in his car when the demand for money was made by

**534**

Butler, rather than right behind Butler, and removing Wicks' earlier testimony that Butler made the demand for money and not the defendant, cut out two essential areas of consideration.

The conviction cannot stand. The case is reversed and remanded.

All of the Judges concur.