**STATE of Missouri, Respondent,**

v.

**Charles McCLAIN, Appellant.**

**No. 57843.**

Supreme Court of Missouri, En Banc.

Sept. 10, 1973.

John C. Danforth, Atty. Gen., Neil MacFarlane, Asst. Atty. Gen., Jefferson City, for respondent.

·Elliott P. Koenig, St. Louis, for appellant.

DONNELLY, Chief Justice.

Appellant, Charles McClain, was convicted of murder in the first degree by a jury in the Circuit Court of the City of St. Louis, Missouri, and his punishment was assessed at death.

This Court does not have jurisdiction of this case under Art. V, § 3, Const. of Missouri, V.A.M.S. Parks v. State, 492 S.W.2d 746 (Mo.1973). We retain and decide the case under authority of Art. V, § 10, Const. of Missouri, for the reasons stated in Foremost-McKesson, Inc., v. Davis, 488 S.W.2d 193, 196 (Mo.1972), and because the death penalty was imposed.

On October 25, 1970, in the early morning, Jeanetta Mitchell was killed in an alley in the City of St. Louis, Missouri, after being raped in O'Fallon Park.

The testimony of two witnesses, Joanne Lewis and Larry Smith, placed appellant in the alley at the time of death. Joanne Lewis testified that she "could see shadows" in the alley but did not know if appellant struck Jeanetta Mitchell. Larry Smith testified that he observed appellant "stomping and hitting her" as she "was laying on the ground."

Larry Smith testified on cross-examination as follows:

"Q. Mr. Smith, you were charged with the murder of Jeanetta Mitchell, were you not? A. Yes, I was.

"Q. And you've been in jail awaiting trial?

"A. · For seven months and four days.

\* \* \* \* \* \*

"Q. Have you been told what length the sentence would be recommended for you if you testified here today? A. Nope.

"Q. You have had some assurance, however, have you not, that if you testified here today that possibly the sentence wouldn't be as heavy, have you not? A. Nope.

"Q. You were present in this alley, were you not, when Jeanetta Mitchell was killed? A. Yes.

"Q. You're telling this jury that you are here testifying, even though you were present and possibly participated in it, that nevertheless you had no assurance that you were going to get a lighter sentence? A. Nope, I didn't anticipate any.

"Q. Sir? A. I did not anticipate any."

The disposition of this appeal is determined by application of the law stated in Napue v. Illinois, 360 U.S. 264, 269, 270, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), and Giglio v. United States, 405 U.S. 150, 153, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

In *Napue,* the principal state witness testified that he had received no promise of consideration in return for his testimony. The Assistant State's Attorney had in fact promised the witness consideration, but he did nothing to correct the false testimony. The Court held that "the failure of the prosecutor to correct the testimony of the witness which he knew to be false denied petitioner due process of law in violation of the Fourteenth Amendment to the Constitution of the United States." The Court said:

"*First,* it is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment, Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791; Pyle v. Kansas, 317 U.S. 213, 63 S.Ct. 177, 87 L. Ed. 214; Curran v. Delaware, 3 Cir., 259 F.2d 707. See New York ex rel. Whitman v. Wilson, 318 U.S. 688, 63 S.Ct. 840, 87 L.Ed. 1083 and White v. Ragen, 324 U.S. 760, 65 S.Ct. 978, 89 L.Ed. 1348. Compare Jones v. Commonwealth, 6 Cir., 97 F. 2d 335, 338, with In re Sawyer's Petition, 7 Cir., 229 F.2d 805, 809. Cf. Mesarosh v. United States, 352 U.S. 1, 77 S.Ct. 1, 1 L. Ed.2d 1. The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears. Alcorta v. Texas, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9; United States ex rel. Thompson v. Dye, 3 Cir., 221 F.2d 763; United States ex rel. Almeida v. Baldi, 3 Cir., 195 F.2d 815; United States ex rel. Montgomery v. Ragen, D.C., 86 F.Supp. 382. See generally annotation, 2 L.Ed.2d 1575.

"The principle that a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the credibility of the witness. The jury's estimate of truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend. As stated by the New York Court of Appeals in a case very similar to this one, People v. Savvides, 1 N.Y.2d 554, 557, 154 N.Y.S.2d 885, 887, 136 N.E.2d 853, 854–855:

"'It is of no consequence that the falsehood bore upon the witness' credibility rather than directly upon defendant's guilt. A lie is a lie, no matter what its subject, and, if it is in any way relevant to the case, the district attorney has the responsibility and duty to correct

what he knows to be false and elicit the truth. . . . That the district attorney's silence was not the result of guile or a desire to prejudice matters little, for its impact was the same, preventing, as it did, a trial that could in any real sense be termed fair.' "

In *Giglio,* the principal state witness testified that he had received no promise of consideration in return for his testimony. In fact, the Assistant United States Attorney, *who presented the case to the grand jury,* did promise the witness consideration. The Assistant United States Attorney, *who tried the case,* was unaware of the promise. The Court held that due process required a new trial, and said:

"As long ago as Mooney v. Holohan, 294 U.S. 103, 112, 55 S.Ct. 340, 342, 79 L.Ed. 791 (1935), this Court made clear that deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.' This was reaffirmed in Pyle v. Kansas, 317 U.S. 213, 63 S.Ct. 177, 87 L. Ed. 214 (1942). In Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), we said, '[t]he same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears.' *Id.,* at 269, 79 S.Ct. at 1177. Thereafter Brady v. Maryland, 373 U.S. [83], at 87, 83 S.Ct. [1194], at 1197 [10 L.Ed.2d 215], held that suppression of material evidence justifies a new trial 'irrespective of the good faith or bad faith of the prosecution.' See American Bar Association, Project on Standards for Criminal Justice, Prosecution Function and the Defense Function § 3.11(a). When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within this general rule. *Napue, supra,* [360 U.S.] at 269, 79 S.Ct. at 1177. We do not, however, automatically require a new trial whenever 'a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict . . . .' United States v. Keogh, 391 F. 2d 138, 148 (C.A.2 1968). A finding of materiality of the evidence is required under *Brady, supra,* [373 U.S.] at 87, 83 S. Ct., at 1196, 10 L.Ed.2d 215. A new trial is required if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury . . . .' *Napue, supra,* at 271, 79 S.Ct., at 1178."

Appellant's trial began October 18, 1971. On the morning of October 19, 1971, before court convened, the Chief Trial Assistant to the Circuit Attorney dismissed the case against Larry Smith. Smith testified later the same morning.

Larry Smith is the only witness who testified that he saw appellant assault Jeanetta Mitchell. Smith's "credibility as a witness was therefore an important issue in the case, and evidence of any understanding or agreement as to a future prosecution would be relevant to his credibility and the jury was entitled to know of it." Giglio v. United States, supra, 405 U.S. 150, 154, 155, 92 S.Ct. 763, 766, 31 L.Ed.2d 104. The failure of the prosecutor to disclose that the charge against Smith had been dismissed requires a new trial under the due process criteria of *Napue* and *Giglio.*

The judgment is reversed and the cause remanded.

All concur.