**STATE of Missouri, Respondent,**

**v.**

**Carl Eugene SUMMERS, Appellant.**

**No. KCD 26445.**

Missouri Court of Appeals,
Kansas City District.

Feb. 4, 1974.

Robert G. Duncan, William E. Shull, Duncan & Russell, Gladstone, for appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

Before DIXON, C. J., and PRITCH-
ARD and SOMERVILLE, JJ.

SOMERVILLE, Judge.

Defendant (appellant herein) was found guilty by a jury of his peers of burglary in the second degree and stealing in conjunction therewith. His punishment was fixed at ten years confinement in the Department of Corrections for burglary and five years confinement for stealing.

The dual charge against defendant arose out of the burglarizing of a certain commercial building in Clay County, Missouri, on November 22, 1970, which was occupied by Dunlop Tire and Rubber Corporation as a warehouse, and the conjunctive theft of certain tires therefrom. The thrust of the state's evidence was that the burglary and theft were perpetrated by six men, the defendant, Carl E. Koonce, Jr., Leo K. Rhoden and Dean Hartley, members of the North Kansas City, Missouri, Police Department at the time, Louis J. Verderber, a reserve officer of the North Kansas City Police Department at the time, and Albert Bossert, operator of a garage and body shop in North Kansas City, Missouri, at the time.

Certain facts in the case—the self-confessed active participation by Rhoden, a member of the North Kansas City, Missouri, Police Department at the time, and by Verderber, a reserve officer of the North Kansas City, Missouri, Police Department at the time—at first blush shake to the very roots the trust and confidence that even the most calloused member of the public places in law enforcement agencies. However, the conduct of the two police officers mentioned constitutes the rarely occurring exception, not the rule, and should in no way impugn the devoted loyalty and unimpeachable integrity of that numberless mass of policemen who constantly risk life and limb, far too frequently without plaudit or adequate compensation, to protect society from the ravages of crime.

Defendant positions his right to appellate relief on five grounds, only two of which must be addressed in order to fully dispose of the appeal, said two grounds being: First, that he is entitled to outright acquittal and discharge because the state's evidence was not legally sufficient to support his conviction of the crimes of burglary in the second degree and stealing, and, further, the state failed to prove the corpus delicti of the charged offenses; and, Second, that he is entitled to have the judgments of conviction and attendant assessments of punishment reversed and to be granted a new trial because the trial court unreasonably and unlawfully circumscribed his cross-examination of state's witnesses Bossert, Verderber and Rhoden, respecting their credibility, bias and interest, and with respect to the laying of a foundation for their further impeachment, all in violation of defendant's right to a fair trial, and in violation of defendant's rights guaranteed by the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States and Article I, Section 18(a), of the Constitution of Missouri, V.A.M.S.

■■ Disposition of the First ground asserted by defendant compels the delineation of certain evidence consonant with the following recognized principles of appellate review. The evidence is to be viewed in the light most favorable to the state; all evidence favorable to the state is considered true, and all reasonable inferences favorable to the state are indulged; all evidence unfavorable to the state is disregarded, and all inferences unfavorable to the state are rejected. State v. Strong, 339 S.W.2d 759 (Mo.1960); State v. Bruton, 383 S.W.2d 525 (Mo.1964); State v. Archer, 328 S.W.2d 661 (Mo.1959); State v. Colthorp, 437 S.W.2d 75 (Mo.1969); and State v. Watson, 350 S.W.2d 763 (Mo.1961). Additionally, the jury, and it alone, possessed the power to weigh and evaluate the evidence and to make the crucial determination of whether the evidence proved defendant guilty beyond a reasonable doubt; appellate review in this respect is relegated to the narrow consideration of whether sufficient substantial evidence exists to support the jury's finding. State v.

Strong, 484 S.W.2d 657 (Mo.1972); State v. Crawley, 478 S.W.2d 344 (Mo.1972); and State v. Odom, 353 S.W.2d 708 (Mo. 1962).

Collectively, the testimony of state's witnesses Bossert, Verderber and Rhoden, self-confessed accomplices, disclosed the following: Sometime during the early morning hours of November 22, 1970, defendant, Bossert, Verderber, Rhoden, Koonce and Hartley assembled in the vicinity of the Dunlop Tire and Rubber Corporation warehouse located in North Kansas City, Missouri. At that time defendant was operating a 1963 Ford station wagon. The sextet proceeded to the Dunlop warehouse in police cars. Entrance to the warehouse was made through a window located on the south side of the warehouse. Part of the sextet remained outside the warehouse and part went inside the warehouse. Tires were removed by those inside the warehouse by means of passing them to Koonce who was on a ladder inside the warehouse, who, in turn, threw them to the ground outside the warehouse. All three of the co-felons testifying for the state, without objection, testified that defendant participated in the crimes of burglary and stealing that occurred at the Dunlop warehouse on November 22, 1970, and one placed defendant inside the warehouse. After some sixty to one hundred tires were extricated from the Dunlop warehouse and thrown on the ground outside, defendant drove one of three station wagons that were then brought to the warehouse and loaded with tires. The three station wagons then transported the tires to Louis J. Verderber's boat shop in North Kansas City, Missouri, where the tires were parceled out to the participants of the crime. Defendant was present when the "parceling out" occurred and when he left the boat shop some of the tires removed from the Dunlop warehouse were in the station wagon which he had been operating and in which he drove away from the boat shop.

The operations manager of Dunlop Tire and Rubber Corporation testified that on the first Monday following November 22, 1970, he discovered that a window had been opened on the south side of the Dunlop warehouse, and, further, that a ladder was present at the opened window on the inside of the warehouse.

Defendant argues that there was, (1) an "insufficiency of the evidence of the defendant's participation in the crime itself", and (2) a "complete lack of evidence of the corpus delicti of the offenses of burglary in the second degree and stealing."

■ As to (1), an "insufficiency of the evidence of the defendant's participation in the crime itself", defendant argues, citing State v. Castaldi, 386 S.W.2d 392 (Mo.1965), that mere presence at the scene of the crime is not sufficient to support a conviction. No quarrel can be leveled at this abstract statement. However, as demonstrated by the above delineated evidence, defendant actively and affirmatively participated in the crimes for which he stood charged. It is a well fixed principle in this state that "evidence fairly showing any form of affirmative participation in a crime is sufficient to support a conviction." State v. Schlagel, 490 S.W.2d 81, 84 (Mo. 1973). See also: State v. Cobb, 444 S.W. 2d 408 (Mo. banc 1969); State v. Butler, 310 S.W.2d 952 (Mo.1958); State v. Ramsey, 368 S.W.2d 413 (Mo.1963); and State v. Reed, 453 S.W.2d 946 (Mo.1970).

■ Defendant further attacks the sufficiency of the evidence to support proof of defendant's participation in the charged offense in that it "was based solely on the testimony of three alleged accomplices". He then bifurcates this attack by arguing, (1) that the testimony of the three alleged accomplices did not rise, legally, to the threshold of substantial evidence, and (2) their self-confessed participation and acknowledged bad character made them totally unworthy of belief. In State v. Harris, 295 S.W.2d 94, 95 (Mo.1956), the court, citing State v. Bockman, 251 S.W.2d 607 (Mo.1952) and State v. Emrich, 250 S.W. 2d 718 (Mo.1952), held that the testimony of accomplices, even though uncorroborat-

ed, was legally sufficient to support a fellow accomplice's conviction, unless it was "so lacking in probative force" as to preclude it from constituting substantial evidence. See also State v. Penn, 413 S.W.2d 281 (Mo.1967). This court's review of the testimony of the accomplices compels the conclusion that their testimony did not lack probative force and, therefore, did constitute substantial evidence of defendant's guilt of the charged offenses—their testimony did not intrinsically lack credibility, it was not patently self-destructive or contradictory, nor was it conclusively impeached by defendant's testimony categorically denying any participation in the charged offenses, or by any other contradictory evidence.

■ As to (2), "complete lack of evidence of the corpus delicti of the offenses of burglary in the second degree and stealing", the answer is found in State v. Hawkins, 165 S.W.2d 644, 646 (Mo.1942) (citing cases):

"In this state the corpus delicti has never been construed to require or consist of more than these two elements: (1) Proof, direct or circumstantial, that the specific loss or injury charged occurred; (2) someone's criminality as the cause of the loss or injury."

Again, as demonstrated by the above delineated evidence, and as measured by the clearly enunciated standard above, there was substantial evidence on behalf of the state of the corpus delicti of the crimes of burglary in the second degree and stealing for which the defendant stood charged.

Focusing now on defendant's second postulate for relief—that his cross-examination of the three admitted accomplices was unreasonably and unconstitutionally circumscribed—one stark truism stands out. The state's case stood or fell on the testimony of the three self-confessed accomplices. Therefore, credibility of the three accomplices became vital considerations for the jurors' determination of defendant's guilt or innocence. If defendant's efforts to test the credibility of the three accomplices were unreasonably thwarted by the trial court, then it is implicit that such become a basic consideration in determining whether defendant was afforded a fair trial, and not merely a secondary consideration in any overall assessment of the conduct of defendant's trial.

■ The genesis of defendant's second postulate was the following question posed to state's witness Bossert (one of the three self-confessed accomplices) on cross-examination:

"Q Now then, Mr. Bossert, how many burglaries have you participated in?"

The assistant prosecuting attorney of Clay County, who was trying the case for the state, immediately objected to the question as "not being relevant to any of the issues in this particular case". The trial judge, prior to ruling the objection, called counsel for both sides to the bench and a discussion outside the hearing of the jury ensued. Defense counsel's portion of the discussion can be paraphrased as follows: The question was relevant and material since it had a direct bearing on the witness' credibility, and, further, it constituted a foundation to subsequently show that the witness had been promised consideration or leniency by the state concerning other burglaries in return for his cooperation in the instant case, likewise bearing on the witness' credibility. The assistant prosecuting attorney's portion of the discussion can be described as "hammering away" that the question was not relevant. However, the assistant prosecuting attorney was not satisfied to stop with merely a legal argument addressed to the objection. The assistant prosecuting attorney, during the discussion, stated to the trial court, "He is always hollering about a deal and he knows damn well there hasn't been any deal made." It is important to note that the assistant prosecuting attorney did not limit his remark by saying that he had "no knowledge of any deal" or by using words of like or similar import. Rather, the language em-

ployed by the assistant prosecuting attorney affirmatively advised the trial court that no "deal" had been made with the witness.[1]

The trial court then declared a noon recess, and, upon reconvening the trial, sustained the state's objection to the above question. Defense counsel also offered to prove that further examination of the witness would disclose his self-confessed, active participation in twenty-five to thirty burglaries in Clay County, but that he was only charged with two of the self-confessed burglaries, which charges were still pending at the time of the defendant's trial. The state's objections to the offers of proof were sustained and the offers of proof denied. As to defense counsel's cross-examination of the two remaining self-confessed participants, Louis J. Verderber and Leo K. Rhoden, in view of the trial court's sustension of the state's objection to the above question posed to state witness Bossert and its preclusion of the attendant offers of proof made by defense counsel, defense counsel made separate offers of proof with respect to each witness regarding, respectively, their active participation in other burglaries. Defense counsel, with respect to these offers of proof, advised the court that their purpose was to attack the credibility of the witness, and to lay a foundation for the further impeachment of the witness by showing promises of consideration or offers of leniency made by the state to the witnesses. The state's objections to the mentioned offers of proof, in conjunction with defendant's cross-examination of state's witnesses, Louis J. Verderber and Leo K. Rhoden, were sustained by the trial court. During oral argument of the case on appeal, counsel for the state and counsel for the defendant stipulated in open court that neither had any objection to this court considering the transcript in the case captioned

"State of Missouri v. Benny Allen Bigler, No. 2839" tried in Division I of the circuit Court of Clay County, Missouri, which involved disposition of some of the tires stolen in the November 22, 1970, burglary of the Dunlop warehouse, and which had been filed and made a part of the record in this court in the case captioned "State of Missouri v. Carl E. Koonce, Jr., No. KCD 26450 [Mo.App., 504 S.W.2d 227],", which also involved the November 22, 1970, burglary of the Dunlop warehouse (this court's opinion in State of Missouri v. Carl E. Koonce, Jr., No. KCD 26450, 504 S.W.2d 227, was handed down December 31, 1973).

The transcript in the "Bigler" case discloses that Mr. William S. Brandom, prosecuting attorney of Clay County, Missouri, therein testified that he told Bigler that in return for his statement and cooperation he "could probably keep him out of the penitentiary"; Brandom further testified that although he could not guarantee that he could keep him (Bigler) out of the penitentiary, there were numerous ways he could help keep him (Bigler) out of the penitentiary, including dismissal of the charges, or recommendations to the parole officer and to the court. Particularly salient to this case is the following testimony by Brandom:

"Q Have you agreed to do just that with Mr. Rhoden and Mr. Bossert and Mr. Vanderber?

A I have agreed to help them stay out of the penitentiary, yes, sir."

The above constitutes the factual matrix from which this court must determine whether defendant's right of cross-examination of state witnesses Albert Bossert, Louis J. Verderber and Leo K. Rhoden was so unreasonably circumscribed as to be constitutionally offensive.

---

1. It is also important to note (because of subsequently delineated matters which entered the case by stipulation) that the Supreme Court of the United States in Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) held that knowledge of promises of consideration or leniency made to an accomplice by one member of a multi-manned prosecutory staff would be imputed to all other members of the staff.

Was the question posed to state's witness Bossert, "Now then, Mr. Bossert, how many burglaries have you participated in?" proscribed by the case law of this state? The answer is no. The Supreme Court of Missouri, the final expositor of the law in this state, ruled in State v. Foster, 349 S.W.2d 922, 925 (Mo.1961) that a substantially similar question was not proscribed on cross-examination:

"While it is error to ask a witness if he has been arrested for or charged with a crime, there is an obvious distinction if he is asked if he committed the crime (Wendling v. Bowden, 252 Mo. 647, 697, 161 S.W. 774, 789), and we conclude this distinction extends to asking him if he has admitted committing an offense."

The obvious distinguishing rationale between asking a witness if he has been arrested for or charged with a crime as opposed to asking a witness if he has participated in or committed a crime is, that as to the former, being arrested or charged with a crime proves nothing as to guilt, but, as to the latter, the witness' answer, if given and in the affirmative (and only the witness can interpose the privilege against self-incrimination), constitutes an admission of guilt of the crime.

Did the question posed to state's witness Bossert on cross-examination, and the attendant offers of proof, probe for relevant and material evidence? The answer is yes. It is academic that cross-examination of witnesses directed toward showing that they have committed criminal offenses is perhaps the most common method of attacking their credibility. Promises of consideration or leniency by the state to accomplices in return for their testimony on behalf of the state in the trial of a fellow accomplice are vital considerations affecting the credibility of the testifying accomplices. Napue v. People of the State of Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); and State v. McClain, 498 S.W.2d 798 (Mo. banc 1973). A

fortiori, matters affecting the credibility of witnesses are always relevant and material [Napue v. People of the State of Illinois, supra; Giglio v. United States, supra; State v. McClain, supra; State v. Thompson, 280 S.W.2d 838 (Mo.1955); State v. Pigques, 310 S.W.2d 942 (Mo.1958); State v. Smith, 377 S.W.2d 241 (Mo.1964); and Rogers v. St. Avit, 60 S.W.2d 698 (Mo.App. 1933)], particularly so where the state's case rests on the testimony of self-confessed accomplices [State v. Rodebush, 487 S.W.2d 531 (Mo.1972)].

The wide discretion possessed by the trial court to fix the outer perimeter of cross-examination [See State v. Winn, 324 S.W.2d 637 (Mo.1959) and State v. Murrell, 169 S.W.2d 409 (Mo. 1943)], should never be permitted to insulate error arising from undue restriction of the right of cross-examination as to relevant and material matters. From both a practical and theoretical standpoint, cross-examination is the most effective tool for ferreting out the truth in the trial of any case, and when unreasonably or narrowly confined, thwarted or suppressed, the ultimate search for truth, the very core of a fair trial, becomes a mockery. The Supreme Court of this state has repeatedly held that undue circumscription of an accused's right of cross-examination as to relevant and material matters constitutes error. State v. Ford, 286 Mo. 624, 228 S. W. 480 (1921); State v. Thompson, supra; State v. Pigques, supra; State v. Rodebush, supra; and State v. Ingram, 286 S. W.2d 733 (Mo.1956).

In Pointer v. State of Texas, 380 U.S. 400, 403–404, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965), the Supreme Court of the United States, in a manner so concise as to remove all doubt, held that the right of confrontation guaranteed an accused by the Sixth Amendment included the right of cross-examination and with equal vigor was binding in state court criminal trials via the Fourteenth Amendment:

"We hold today that the Sixth Amendment's right of an accused to confront

the witnesses against him is likewise a fundamental right and is made obligatory on the States by the Fourteenth Amendment.

It cannot seriously be doubted at this late date that the right of cross-examination is included in the right of an accused in a criminal case to confront the witnesses against him."

Building on the basic constitutional foundation laid down in *Pointer*, the court in Smith v. State of Illinois, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968) held that not only was complete denial of cross-examination to an accused in a state court criminal trial constitutionally offensive under the Sixth and Fourteenth Amendments, but, also, the unreasonable circumscription of an accused's right of cross-examination in a state court criminal trial as to relevant and material matters was, likewise, constitutionally offensive.

This court holds that defendant was denied reasonable latitude in his cross-examination of state's witnesses Albert Bossert, Louis J. Verderber and Leo K. Rhoden, thereby emasculating his right to a fair trial because in violation of his Sixth Amendment right of confrontation. Bear in mind, the only credential carried by a witness to prove the truth of his testimony, when put in issue, is that he withstood the full scope of a legitimate, searching cross-examination. The areas of cross-examination proscribed by the trial court in this case were of critical importance since they involved the credibility of accomplices upon whose testimony the state's entire case pivoted.

All of the protective mantles contained in the Bill of Rights indiscriminately clothe each and every citizen without regard to guilt or innocence. The image of justice is cut by rigid adherence to this principle. When the judicial decisional process yields to arguments of necessity emanating from a feeling of compulsion to assuage public criticism running the gamut from coddling criminals to judicial despo-

tism, the image of justice is defaced. The words of the immortal William Pitt serve to remind all of the fallacy of yielding to such arguments: "Necessity is the plea for all infringements of human liberty; it is the argument of tyrants."

Defendants remaining three points on appeal are unlikely to occur on retrial of the case and their treatment here is otherwise unnecessary to the disposition of this appeal.

Judgment reversed and cause remanded for a new trial.

All concur.