STATE of Missouri, Respondent,

v.

James A. MOTEN, Appellant.

No. 28059.

Missouri Court of Appeals,
Kansas City District.

Aug. 30, 1976.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 12, 1976.

Thomas M. Larson, Public Defender, Lee M. Nation, Asst. Public Defender, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Douglas G. Mooney, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P. J., and WELBORN and HIGGINS, Special Judges.

ROBERT R. WELBORN, Special Judge.

A Jackson County Circuit Court jury found James A. Moten guilty of robbery in the first degree and fixed his punishment at seven years' imprisonment. This appeal is from the ensuing judgment and sentence.

On October 4, 1974, at 3:00 P.M., two black males entered the Manor Baking Company Thrift Store on East Highway 40 in Kansas City. They pretended to be customers until other customers left. Then one of the men produced a pistol and told the employee in charge "All right, you know what this is. Don't move." He forced the employee, Rhoda Pennington, to the floor, striking her once with the pistol. The contents of the cash register ($267.00) were emptied into a sack and after Mrs. Pennington was again struck with the pistol, knocking her unconscious, the men left.

Police were called to the scene of the robbery and Mrs. Pennington described the robbers. Some two weeks after the robbery, Mrs. Pennington went to police headquarters and, from a photograph, identified James Moten as one of the robbers. She picked Moten out of a three-man lineup that evening. At Moten's trial, Mrs. Pennington identified him as the robber who did not have the gun. She testified that she had seen Moten in the store several times previous to the robbery and had an opportunity to observe him for several minutes on the occasion of the robbery.

Moten produced testimony of fellow employees at the Mission East Nursing Center to show that on the date of the robbery he was at work from 7:45 A.M. until 4:00 P.M. Moten testified that he was at his place of employment until 4:00 P.M. and that he received his paycheck there at about 3:00 P.M.

■ On this appeal, appellant first contends that the trial court erred in admitting over his objection evidence of his work habits at the Mission East Nursing Center. This point might be disposed of summarily inasmuch as appellant's statement of his point does not point out "wherein and why" the action of the trial court was erroneous. Rule 84.04(d). From the argument it may be found that appellant's contention is that such evidence was prejudicial, irrelevant and sought to prove appellant's "work reputation" by "specific acts of conduct."

As above stated, the defense was alibi, with defendant attempting to show that he was at work at the time of the robbery. His first witness was the personnel clerk of the Mission East Nursing Center. She produced appellant's time card for October 4, 1974, which showed that appellant checked in at 7:45 and out at 4:01. On cross-examination, the witness stated, in response to the prosecutor's question, that appellant's work record was "quite unsatisfactory." Thereupon defense counsel stated: "Your Honor, I am going to object to the work records of the defendant as not one of the issues in this trial. I am going to object to this entire line of questioning." The objection was overruled and appellant cites this as one instance of error. Cross-examination of the witness proceeded to show that appellant's unsatisfactory rating was in part attributable to unexcused absences from work which did not necessarily appear on the time records.

The Executive Housekeeper at the Center, under whom appellant worked as a custodial worker, testified on direct examination by appellant's counsel that she "caught" appellant and another employee leaving without permission by the side door to the institution at 9:30 A.M., October 4, and that she "sort of bawled them out * * *." She testified that she gave appellant his check that afternoon between 3:30 and 4:00 P.M. On cross-examination, the witness testified, without objection, that appellant's employment was terminat-

ed because his work was unsatisfactory. The witness also testified, without objection, that she had learned from other employees of appellant's absences during working hours. The specific question asked the witness and which appellant now finds objectionable was whether or not appellant would "sneak off and watch T.V." The witness stated, again without objection, that she "caught him watching the T.V. a couple of times." Appellant also points to another question on cross-examination in which the witness was asked whether a lot of times appellant failed to get his work done to which the witness responded, no objection having been made, "That's right."

A fellow employee who had also been discharged at the time of the trial testified that he saw appellant at work at 3:00 P.M. on October 4. This employee was asked on cross-examination whether he was caught with defendant watching T.V. on October 14. No objection to the question was made and the witness replied that he did not remember. This too is one of the incidents relied upon on this assignment of error.

Finally, on cross-examination of defendant, he was asked whether or not his employment at Mission East was terminated because for one reason he did not work when he was supposed to. The appellant replied: "My work wasn't up to standards; * * * ." This is the final incident relied upon by appellant.

The objection now voiced that the prosecutor was trying to present evidence of poor character by specific acts was never stated to the trial court. At best, giving appellant the benefit of a continuing objection based upon his first objection, the ground of objection in the trial court was that of irrelevancy. However, the interrogation, though it went rather far afield in the absence of objection to specific questions, was relevant from the standpoint of testing the alibi witnesses' testimony that appellant was at work at the time of the robbery. The questions were designed to show that absence from work on the part of the defendant during the working day was not unusual and that the fact that the

witnesses had seen defendant at work earlier and later on the date of the robbery did not necessarily mean that he was there at the critical time. That was the basic thrust of the cross-examination and as such it cannot be said to have been irrelevant. Certainly no abuse of discretion on the part of the trial court has been shown which would warrant the conclusion that its rulings were erroneous on the basis of the objection there made.

Appellant's second assignment of error is based upon the state's use in evidence of two photographs of the lineup at which Mrs. Pennington identified appellant, the photographs not having been produced in response to appellant's discovery request.

In the cross-examination of Mrs. Pennington, defense counsel asked questions designed to show that the other two persons in the three-man lineup at which she identified appellant were so dissimilar in appearance as to cause her to select appellant from the three. When, on redirect examination, the state produced two photographs of the lineup and offered them in evidence, defense counsel objected on the grounds that the photographs had not been produced in response to his discovery request. The prosecutor was not certain that the photographs had been in his file when he exhibited them to appellant's counsel, but he further stated that it was not his original intention to use the photographs and that he decided to do so as a result of the cross-examination of Mrs. Pennington on the lineup. The trial court overruled the objection, stating that the photographs were in the nature of rebuttal and their use produced no unfairness rising to constitutional proportions.

■ Under Rule 25.45, the exclusion of evidence not produced under discovery rules is one of the sanctions available to the trial court. The imposition of such sanction is a matter for the trial court's discretion. See *State v. Johnson*, 524 S.W.2d 97, 101–103[5][6] (Mo. banc 1975). Basically, the question is whether or not the failure to produce as required by the rules results in fundamental unfairness to the defendant.

State v. Buckner, 526 S.W.2d 387 (Mo.App. 1975). In his brief, appellant states that he places primary reliance upon Buckner. Buckner involved the failure on the part of the prosecutor to provide a signed written statement of the victim of a robbery and the principal witness for the state on the trial, compounded by the failure of the trial court, at the trial, to require production of the statement when its existence was disclosed. Inasmuch as the statement was not produced, the prejudice resulting from its nonproduction was impossible to assess and the court concluded that the only way to remedy the situation was to order a new trial.

■ Here the trial court dealt with two photographs not produced on discovery but presented at the trial. The court was in a position to assess whether permitting the use of the photographs might involve fundamental unfairness and concluded that there was no fundamental unfairness which required that the materials be excluded. The court here saw and considered the evidence, engaged in a fair exercise of discretion and concluded not to impose the requested sanction. The appellant has not shown that the action on the part of the trial court was an abuse of discretion. See State v. Dayton, 535 S.W.2d 469, 478[15, 16] (Mo.App.1976).

■ Appellant contends finally that the trial court erred in failing to sustain objections to or to censure in any manner the prosecutor's misstatements of the evidence in his closing argument. Appellant has pointed out several examples of claimed misstatement by the prosecutor in his closing argument. He complains that the prosecutor stated that Mrs. Pennington saw a yellow auto at the scene of the robbery, with a particular license number. Appellant states that the police officer who answered the call to the scene stated that Mrs. Pennington described the robber's vehicle as a black vehicle. Mrs. Pennington did testify that she saw a yellow auto near the store before the robbery and that it was gone afterward. The prosecutor's remark was not a misstatement of her testimony.

She did acknowledge that she described the black auto to the police as the first car she saw leaving the vicinity after the robbers left. She did not obtain a license number of either vehicle but someone obviously did get one for a yellow auto which was traced to appellant's brother and found by the police the day after the robbery. Just where any prejudice might have resulted in this regard does not appear.

■ Appellant complains that the prosecutor stated that appellant struck her when she testified that the other robber did so. When defense counsel objected, the prosecutor stated that he was relying upon the doctrine of responsibility of all for the acts of each in a criminal endeavor. He then stated that defendant told his companion to hit the victim again, as Mrs. Pennington did testify. It seems clear that, although the trial court merely stated in response to defense counsel's objection that the jury would remember the evidence, the prosecutor himself corrected his statement.

■ Appellant complains that the prosecutor argued that defendant's supervisor stated that defendant was discharged for unexplained absences, where as the witness stated that it was because his work was unsatisfactory. One witness did testify that termination of defendant's employment was due in part to his unexplained absences. The argument was not a misstatement of that witness's testimony and the prosecutor did not attribute the statement to appellant's supervisor.

■ The prosecutor stated, without objection, that none of appellant's fellow employees testified that they saw him at his place of work at 3:00 P.M. on the date of the robbery. One former fellow employee did so testify, but inasmuch as there was no objection to the prosecutor's statement in this regard, there is no basis for error on this score. Furthermore, defense counsel corrected the misstatement in his closing argument.

There has been no showing of error on the part of the trial court. The misstatements complained of were at the most mi-

nor and did not require corrective action on the part of the trial court. The trial court had instructed the jury in accordance with MAI–CR 2.68 as to the import of the arguments of counsel. For the most part, the remarks objected to were arguably not misstatement. Those that were did not stand uncorrected, either by the prosecutor or the defense counsel. This assignment of error is without merit. *State v. Coleman,* 441 S.W.2d 46, 53–54[15]–[17] (Mo.1969).

Judgment affirmed.

All concur.