STATE of Missouri, Respondent,

v.

James L. DAVIS, Appellant.

No. 59850.

Supreme Court of Missouri,
en banc.

Sept. 27, 1977.

Rehearing Denied Oct. 11, 1977.

**46**

Lee M. Nation, Kansas City, for appellant.

Nanette K. Laughrey, Asst. Atty. Gen., Jefferson City, for respondent.

RENDLEN, Judge.

This cause was transferred here after opinion by the Court of Appeals, Kansas City district, under Rule 83.02. The Court of Appeals identified issues of constitutional construction falling within the exclusive appellate jurisdiction of the Supreme Court by virtue of Mo.Const. Art. V, § 3, as amended 1976, and properly ordered the transfer. Defendant, tried and convicted under the Second Offender Act for stealing more than $50, was sentenced by the circuit court of Jackson County to four years imprisonment.

■ Two assignments of error are raised in this appeal. Defendant first contends the trial court erred in failing to strike the jury panel because Missouri's jury selection process, Mo.Const. Art. I, § 22(b) and § 494.031(2), RSMo Supp. 1975,[1] systematically excludes women from jury service and is therefore unconstitutional, citing *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). *State v. Duren,* No. 59914, 556 S.W.2d 11 (Mo.banc 1977), decided concurrently with the case at bar, upheld the challenged constitutional section and its implementing statute which permit women the privilege of declining jury service and that decision is dispositive of this defendant's sex-based challenge to the facial validity of the cited sections.

The remaining aspect of defendant's contention concerns the *results* of the Jackson County jury selection process. In this regard defendant has failed to demonstrate that criminal venires in the county were not "representative of the community" and were "almost totally male" as those constitutional standards were described in *Taylor.* During the week of defendant's trial, 350 persons were summoned as jurors in Jackson County and of that number 99 (28%) were women. Of the 154 who appeared, 23 (15%) were women. Defendant's panel of 28 included 6 (21%) women and one sat as a juror. No statistical data pertaining to the percentage of women in the community population or any information showing gender distribution of venires for periods prior to or following the week of trial were offered. The proof does not support the contention of systematic sex-based exclusion and the first assignment of error is denied.

Defendant next contends the trial court erred admitting certain state's exhibits which though requested prior to trial under Rule 25.32 had not been made available to defense counsel for inspection. The incident precipitating criminal charges against him occurred when defendant and his wife entered Macy's department store in Kansas City on the evening of November 8, 1974. The store security manager observed them in the linen section putting double bed sheets and satin pillowcases into shopping bags and concealing the bags between display beds on the floor. Defendant and his wife left the linen department to visit the budget section of the store and at this point the manager, Mr. Wilk, called Mr. Taylor, a security officer, informed him of the incident and showed him the hidden bags of merchandise. Subsequently the couple returned, retrieved the bags and without paying, exited onto the parking lot where they

1. The questioned constitutional section and statute are in pertinent part: Mo.Const. Art. I, § 22(b)—"No citizen shall be disqualified from jury service because of sex, but the court shall excuse any woman who requests exemption therefrom before being sworn as a juror."

§ 494.031, RSMo Supp.1975—"The following persons shall, upon their timely application to the court, be excused from service as a juror, either grand or petit: . . . (2) Any woman who requests exemption before being sworn as a juror; . . . .."

were apprehended by Wilk and Taylor. The stolen property was delivered to the Kansas City Police Department where it was held until trial.

Soon after the information was filed defense counsel served a request for discovery under Rule 25.32, stating "The Defendant, . . . requests the following within 10 days and/or throughout the duration of this cause: . . . (6) Any . . . objects which the State intends to introduce into evidence at the hearing or trial or which were obtained from or belong to the Defendant". The stolen articles were admitted in evidence over defendant's objection and testimony as to value was adduced from Macy's buyer who had purchased the items for the store. The wholesale value of each package of pillowcases was $4.75 or $47.50 for the lot, plus 20 packages of sheets at $7.50 wholesale, totaling $150.00 or a grand total of $197.50 for all items stolen. Defendant offered no evidence but contends the trial court erred admitting the exhibits because the state had failed to produce them for examination prior to trial, effectively denying him the opportunity to show the value of the stolen goods was less than $50.00, which could have defeated the felony charge and have avoided conviction under the Second Offender Act.

Rule 25.32(A)(6) provides that on written request the state shall disclose to defendant's counsel "objects, which the state intends to introduce into evidence at hearing or trial or which were obtained from or belong to the defendant". The state argues that because defendant knew the state held the stolen materials and because defendant had photocopied the state's file, this sufficed to meet the disclosure requirements of the Rule. This narrow construction is inconsonant with Rule 25.32(C) which in particular situations requires the items be "made available to defense counsel" and Rule 25.36 which provides that "Unless otherwise ordered by the court, disclosure under Rules 25.32 through 25.35 shall be: . . (B) By the party making disclosure notifying opposing counsel that the material and information to be disclosed may be inspected, obtained, tested, copied or photographed

at a specified time and place and whether suitable facilities are available." The court under Rule 25.40 may issue protective orders to control the manner, place and time for such procedure.

■ While defendant by virtue of his request was entitled to inspect the proposed evidence, during opening statement the prosecuting attorney explained the stolen merchandise had been in the control of the police department and he had no authority "to take them out" prior to trial. This appears counter to the requirement of Rule 25.32(C) that if the requested material is "in the possession or control of other governmental personnel, the state shall use diligence and make good faith efforts to cause such materials to be made available to the defense counsel . . . ." The state was under a continuing duty to make the materials available for defense counsel's inspection. It strains credulity to believe the prosecutor could not have obtained the items from the police department prior to trial and yet with apparent ease produce them for presentation in evidence. However, it was defendant's responsibility to call this failure to the court's attention and request appropriate orders under Rule 25.45 for disclosure of the material, exclusion of the same from evidence, for continuance or other relief. Defendant served his request for discovery within a week following filing of the information. During the ensuing four months he pursued discovery photocopying pertinent portions of the state's file and was aware the stolen merchandise had not been made available for inspection, yet he sought no orders requiring disclosure or other relief under Rule 25.45 nor for subpoenas duces tecum as provided by Rule 25.19. Neglecting these procedures, defendant now contends preparation of his defense was thwarted by the state's noncompliance with the request for discovery.

■ While it seems the state's action (or inaction) is violative of Rule 25.32, exclusion of the evidence not produced for inspection was a matter for the trial court's discretion and defendant has shown no er-

ror in the exercise of that discretion, *State v. Moten,* 542 S.W.2d 317 (Mo.App.1976); *State v. Johnson,* 524 S.W.2d 97, 101 (Mo. banc 1975), or that the failure to produce resulted in fundamental unfairness or prejudice to the substantial rights of the defendant requiring reversal under Rule 84.-13(b). See *United States v. Cole,* 453 F.2d 902 (8th Cir.), *cert. denied* 406 U.S. 922, 92 S.Ct. 1788, 32 L.Ed.2d 122 (1972); *State v. Gibson,* 502 S.W.2d 310 (Mo.1973); *State v. Smith,* 534 S.W.2d 604 (Mo.App.1967). The unrebutted testimony of two witnesses to the wrongful taking was coupled with the fact of defendant's apprehension outside the store with the stolen property in his possession. Testimony of the items' value came from Macy's purchasing agent who bought the merchandise and personally knew its wholesale price. Defendant argues that if he had inspected the articles he might possibly have developed credible testimony that the 30 items (10 satin pillowcases at $4.75 per package and the 20 double bed sheets at $7.50 per package) were of a value less than $50.00 or approximately ¼ of the wholesale price. We are asked to regard the loss of this possibility as a basis for reversible error though defendant sat by during the four months prior to trial ignoring available procedures to force the desired inspection. Defendant appeared content to proceed with trial, object to the evidence when offered and if overruled, claim error in the event of an unfavorable verdict. Such oversight or trial strategy should not serve as a basis for reversal. We are also mindful as stated in *State v. Degraffenreid,* Mo., 477 S.W.2d 57, 65, "that error which in a close case might call for reversal may be disregarded as harmless when the evidence of guilt is strong." Because the evidence of guilt was strong and the alleged violation in the discovery proceedings could have readily been corrected by timely action of defendant, we find nothing requiring reversal.

The judgment of the trial court is affirmed.

MORGAN, C. J., and HENLEY, FINCH and DONNELLY, JJ., concur.

SEILER, J., dissents in separate dissenting opinion filed.

BARDGETT, J., dissents and concurs in separate dissenting opinion of SEILER, J., except as to the female juror issue.

SEILER, Judge (dissenting).

While I agree wholeheartedly with the principal opinion that the state should have made the stolen property available to defense counsel and that it strains credulity to believe the prosecution could not have obtained the items from the police department for defense counsel's inspection prior to trial, I am unable to agree that the failure on the part of the state to comply with the discovery rules should be excused so readily. I fear the end result is that the prosecution is rewarded for its disregard of the discovery rules and a dangerous precedent is established whereby future prosecutors can with impunity avoid compliance with the discovery rules.

We are signalling prosecutors that even though defense counsel has made the necessary written request, the state need not comply unless the defendant makes additional requests for that for which he has already asked once and to which he is entitled without further request. We are also telling prosecutors that if defendant cannot show that the prosecutor's recalcitrance resulted in "fundamental unfairness or prejudice" to the defendant, the prosecutor escapes scot free. When we consider that defendant is entitled to discovery without first having to show that there would be fundamental unfairness or prejudice unless the requested discovery is made, it seems inconsistent to require that kind of a showing when defendant is complaining about the state's failure to comply with the discovery rules. The state ought to be the one to do the explaining. Additionally, it is most difficult, after verdict, to prove that the state's failure to produce resulted in fundamental unfairness or prejudice. By this time, the jury has already spoken and who can say for sure what would have happened had discovery been made on

schedule as called for and defendant been able to have used the information or material or what could have been developed therefrom before the jury?

If discovery in criminal cases is desirable and this court, after lengthy and painstaking consideration, has by the adoption of the criminal discovery rules decided that it is desirable, then we should vigorously insist upon discovery at the proper time, which is prior to trial, while the defendant is still presumed to be innocent, and when he is entitled to a decent opportunity to prepare. If we permit the prosecution to maneuver the case to the point where discovery is judged in the light of hindsight, after defendant has been convicted without the required discovery having been made, we will destroy pre-trial discovery and turn it into a game of how much discovery can the prosecutor safely evade, secure in the knowledge that if he can nevertheless obtain a conviction, his omissions will probably be overlooked.

The majority opinion says: "While it seems the state's action (or inaction) is violative of rule 25.32, exclusion of the evidence not produced for inspection was a matter for the trial court's discretion and defendant has shown no error in the exercise of that discretion, *State v. Moten,* 542 S.W.2d 317 (Mo.App.1976); *State v. Johnson,* 524 S.W.2d 97, 101 (Mo.banc 1975) . . . ."

I do not find *Johnson* or *Moten* to be supportive of the contention for which they are cited.

In *Johnson,* we reversed and remanded a conviction wherein the prosecution had introduced, "in the guise of impeachment testimony", 524 S.W.2d at 101, a statement it had not disclosed during discovery. We specifically noted that the action of the trial court in permitting the introduction of this evidence "does not evidence a proper exercise of discretion" and hence was not subject to review only for abuse of discretion. We went on to decide the case on the application of "fundamental fairness". Id. at 103. That same distinction applies here. It was fundamentally unfair to defendant to keep from him the items of merchandise in question until a point in the trial when it was too late for him to dispute the values placed thereon by the state.

In *Moten,* the court of appeals determined that "the appellant has not shown that the action on the part of the trial court was an abuse of discretion." 542 S.W.2d at 321. The facts there were as follows: "[D]efense counsel objected on the grounds that the photographs had not been produced in response to his discovery request. The prosecutor was not certain that the photographs had been in his file when he exhibited them to appellant's counsel, but he further stated that it was not his original intention to use the photographs and that he decided to do so as a result of the cross-examination of Mrs. Pennington on the lineup. The trial court overruled the objection, stating that the photographs were in the nature of rebuttal and their use produced no unfairness rising to constitutional proportions." Id. at 320.

We are not dealing here with a case in which the proffered undisclosed evidence was used in rebuttal or impeachment only, or where it was the subject of facts which were "proved independently" of the disclosed evidence. *State v. Dayton,* 535 S.W.2d 469, 478 (Mo.App.1976). The value of the allegedly stolen merchandise was a principal element of the criminal charge. Whether prejudice results in such a case "depends upon the nature of the charge, the evidence presented by the State, and the role the undisclosed testimony would likely have played," Id.

While exclusion of the evidence produced may have been a matter for the trial court's discretion, I believe that a violation of rule 25.32 by the introduction of such evidence in the presentment of the state's case, where it "strains credulity to believe the prosecutor could not have obtained the items from the police department prior to trial and yet with apparent ease produce them for presentation in evidence," should be deemed fundamentally unfair. We would then avoid what I fear is the unintended invitation to prosecutorial abuse which the majority opinion presents.

**50**

Nor do I believe we should take the position that because the state has a strong case, failure to disclose thereby becomes harmless. If that is to become the rule, then the state can safely ignore the discovery requests of the defendant any time it has a strong case. In such instances, the prosecutor should scrupulously abide by the rules. Otherwise, we will drift into the rationalization that since the defendant is obviously guilty, why bother with the niceties of compliance with rules and safeguards? Furthermore, how can we be certain the state has such a strong case? It is for the jury to decide which witness will be believed. The fact that to us the testimony of the Macy buyer seems unimpeachable and conclusive does not mean that the jury would not have believed some other qualified witness who, had he been given an opportunity to inspect the stolen merchandise, might have been convinced it was overpriced and testified that it was worth much less, perhaps under $50.00. Defendant's claim of prejudice should not be defeated by our high opinion of the credibility of the state's witness. This is for the jury. *McQueen v. Swenson*, 560 F.2d 959 (8th Cir. 1977).

*State v. Degraffenreid*, 477 S.W.2d 57 (Mo.banc 1972), relied upon by the principal opinion, did not involve discovery matters and the statement quoted therefrom was dicta, as the case was a close one on the issue of guilt or innocence and the conviction was reversed and the cause remanded.

For these reasons, in addition to the reasons given in my dissent in *State v. Duren*, No. 59914, 556 S.W.2d 11 (Mo.1977), on certain other points which also apply to this case, I respectfully dissent.