STATE of Missouri, Respondent,

v.

Fred Edson DAVIS, Appellant.

No. 29881.

Missouri Court of Appeals, Kansas City District.

Dec. 27, 1978.

Motion for Rehearing and/or Transfer Denied Jan. 31, 1979.

Application to Transfer Denied March 13, 1979.

Clifford A. Cohen, Public Defender, L. D. Mayo, Jr., Asst. Public Defender, Kansas City, for appellant.

John D. Ashcroft, Atty. Gen., John M. Morris, III, Asst. Atty. Gen., Jefferson City, for respondent.

Before HIGGINS, Special Judge, Presiding, PRITCHARD, J., and WELBORN, Special Judge.

ROBERT R. WELBORN, Special Judge.

Appeal from judgment of conviction on two counts of robbery in the first degree. A jury found Fred Davis guilty of the charges and he was sentenced, in accordance with the verdict, to five years' imprisonment on each count. The sentences were ordered to be served consecutively.

At around midnight on November 13, 1976, Ms. Laurabelle Steffens and her sister, Ms. Viola Miller, were at the Fun House Pizza Parlor in Independence. They had eaten a sandwich in the pizza parlor and were there about an hour. Ms. Steffens' attention had been drawn to two men seated in an adjoining booth and when she and her sister started to leave, the two men did likewise. When Ms. Steffens hesitated in order to take her car keys from her purse before leaving, the two men also hesitated. As Ms. Steffens got into the main hallway, she told her sister, "I think we are being followed." Her sister told her, "You are just imagining."

The women walked into the parking lot and were about halfway to Ms. Miller's car when a voice behind them said: "Hand us your purse." They turned. Ms. Steffens recognized the two men behind them as the men they had seen in the pizza parlor. The younger of the two men who was holding a knife took Ms. Steffens' purse. Ms. Miller backed away and took her billfold from her purse and offered it to the older of the two men. He refused to take the billfold alone and demanded her purse which she gave to him. The women were told to get in their car and leave. The men entered an Oldsmobile parked on the parking lot.

As the men got into the car, the women began to scream. Ms. Miller told her sister to take the license number of the men's car and she ran back into the pizza parlor, where she attracted the attention of patrons and employees. Ms. Steffens took the license number and ran back into the parlor. As she did so, her sister accompanied by several persons came out another door. When Ms. Steffens again went outside, she saw the older of the men lying on the ground with persons sitting on him. The younger man was not present.

An employee of the pizza parlor who went outside in response to Ms. Miller's call saw two men in the Oldsmobile, trying to get it started. He and others tried to prevent the men from starting the auto. It did start and the men started to leave, but the car stalled. The employee and others dragged one of the men from the car and sat on him until police arrived. The employee testified that, as they were trying to get the man out of the car, he said, "Stay away or I'll kill you." The second man fled, pursued by two pizza parlor employees. He stopped a short distance away, saying, "I didn't do anything." The employees asked him to come back and wait for the police and he did so without objection. As he walked back he threw an object into the street, saying it was old car keys. After the police arrived, a search of the area produced a knife. The two purses were found on the front seat of the Oldsmobile.

Police arrived at the scene and the men were placed under arrest. The older man was appellant Fred Davis. The younger man who had fled was William Sumner.

Davis was charged in separate counts with first degree robbery from Ms. Steffens and Ms. Miller. At his trial Ms. Steffens testified to the circumstances of the taking of the purses. Ms. Miller did not testify. There was testimony from the pizza parlor employees about their activity in assisting in the apprehension of the defendant and his companion.

Davis testified that Sumner was an acquaintance who had come to his house on the evening of November 13 and asked Davis to take him in search of a man who owed him some money. After looking for the man in various places, the two arrived at the Fun House Pizza Parlor where Davis ordered a sandwich. As they started to leave, Sumner was 12 or 14 feet ahead of Davis. He followed Sumner outside, past their car, and then noticed that two women ahead of Sumner had turned around. He saw that Sumner had a purse in his hands and that one of the women was "digging" in her purse. Davis asked the woman what she was doing and she said, "I'm getting out my billfold to give it to you." He replied, "I do not want your billfold." He turned to Sumner and said, "Put that purse on the ground and go to the car." He turned around to talk to the woman and "* * * the next thing I knew, the woman was taking off in the parking lot, screaming 'Robbery'." Davis said he started to the car. Sumner was in the car. When Davis got into the car, a "crowd" of people came out of the pizza parlor. He said that he was just going to lock the car and sit there, but one door wouldn't lock and the people opened it and started to pull him out of the car. He tried to start the car, but was pulled from it to the ground. He told a man who had his arm on Davis's throat: "Hey, I give up. I'm not doing anything. Are you trying to kill me?" Davis denied that he took anyone's purse and said that Sumner had not told him of any plan to rob anyone.

On his appeal, the first complaint is that the trial court erred in failing to dismiss the charges against appellant for the failure of the state to comply with the trial court's discovery order. Rule 25.32.

In response to a defense discovery request, the prosecutor provided a copy of the police report of the incident. Several pages of the report were illegible. On February 11, 1977, a request for legible copy was unproductive, so a motion to compel discovery was filed February 28. The motion was sustained and the state was ordered to produce a legible copy of the police report by March 28. The order was ignored and on August 31, a motion to dismiss the charges for the prosecutor's noncompliance was filed. On September 8, the prosecutor supplied defense counsel with a legible copy of the police report.

When the case came on for trial on September 26, 1977, defense counsel brought up the motion to dismiss. He complained that the illegible report contained the names of three persons who had witnessed the events on the pizza parlor parking lot but that because the report furnished was illegible in part, he had been unable to ascertain the names of the three persons until the legible

copy was finally furnished. At that time an investigator for defense counsel attempted to get in touch with two of the persons but he was unable to do so. No effort was made to talk to the third person. The trial court offered to give defendant a continuance to permit counsel to attempt to find and interrogate the three persons. After consulting with the defendant, defense counsel stated:

"Your Honor, at this time the defendant doesn't feel that a continuance would cure the harm that has already been done. Defendant feels that having an opportunity to get in touch with these witnesses at this late date would not be of much value, considering the fact that in a few weeks it will have been an entire year since the alleged crime was supposed to have occurred. Defendant feels that rather than put off his trial any further, he would prefer to go to trial at this time."

The court then overruled the motion to dismiss.

Appellant's position here is that stated to the trial court. He contends that he was prejudiced by the delay of the disclosure of the three persons and that the prejudice could be remedied only by dismissal of the charges.

■ The imposition of sanctions under Rule 25.45 and the choice of the nature of the sanctions are matters for the discretion of the trial court. *State v. Broyles,* 559 S.W.2d 614, 615[1] (Mo.App.1977); *State v. Moten,* 542 S.W.2d 317, 320[2] (Mo.App. 1976). "Basically, the question is whether or not the failure to produce as required by the rules results in fundamental unfairness to the defendant. *State v. Buckner,* 526 S.W.2d 387 (Mo.App.1975)." *State v. Moten,* supra.

■ In this case, the state offered no explanation or excuse for noncompliance with the discovery order. On the other hand, counsel for defense made no effort to enforce the order or in any manner call the court's attention to the state's delinquency for some five months. The order required production of the good copy of the police report by March 28. The first step to enforce the order was by way of the motion to dismiss, filed August 31. When the motion was filed, the state produced a legible copy of the report on September 8. Counsel for the defendant made only a small effort then to locate the persons named—a telephone call in an attempt to locate one and a personal visit looking for the other. Both efforts were unsuccessful and nothing was done about the third person.

In such circumstances, the *offer* by the trial court to grant a continuance, declined by appellant, and the overruling of the motion to dismiss were not an abuse of discretion.

Appellant's argument that the passage of time necessarily damaged him because the witnesses' memories would have become dim even if he had been able to locate them after the good report was furnished is wholly speculative. The trial court afforded him an opportunity to demonstrate the validity of that argument when he offered a continuance to permit defendant to determine whether or not such was the case. There having been no demonstration that appellant was deprived of favorable evidence by the state's delay in complying with the discovery order, this court will not hold the trial court's refusal to dismiss the charges an abuse of discretion.

■ Appellant next contends that the trial court erred in overruling his motion to dismiss at the close of all the evidence in the case charging robbery from Viola Miller. He contends that there was insufficient evidence from which the jury could find that he, either acting alone or knowingly in concert with another, took Ms. Miller's purse by violence to her person or by putting her in fear of some immediate injury to her person. Inasmuch as the charge was submitted on a theory of taking from Ms. Miller "by causing her to fear immediate injury to her person," the inquiry will be limited to that basis.

Appellant's argument is premised upon what he considers the rational approach of Ms. Miller upon the demand for her purse.

Instead of complying immediately, she offered her billfold because she wanted to keep her purse with her car keys in it. According to Ms. Steffens, appellant insisted on the purse, so Ms. Miller gave it to him.

Appellant then notes that after the women were told to get into their car, they started to do so, but when Ms. Miller realized that she didn't have her keys, she yelled to them that she had to have her keys. Appellant then notes that Ms. Miller did not become "hysterical" until the appellant and his companion started to leave.

This argument demonstrates only that Ms. Miller did act rationally when her purse was demanded. It de-emphasizes the fact that, although Ms. Miller did offer her billfold at first, she, in the end, surrendered the purse as demanded. Appellant offers no explanation for this action on her part. The only logical explanation and inference to be drawn from the evidence are that she surrendered her purse because of her fear of immediate injury if she did otherwise. "Fear of immediate injury * * * need not be expressly shown, e. g., *State v. Underwood,* 470 S.W.2d 485, 486 (Mo.1971), cert. den., 405 U.S. 928, 92 S.Ct. 980, 30 L.Ed.2d 802 * * * (1972). A presumption of fear will arise from evidence showing some reasonable grounds therefor. *State v. Ray,* 354 S.W.2d 840, 843 (Mo.1962); *State v. Tidwell,* 500 S.W.2d 329 (Mo.App. 1973)." *State v. Day,* 560 S.W.2d 322, 323[1–3] (Mo.App.1977). The flourishing of a knife by one of the men would certainly afford reasonable grounds for fear on the part of Ms. Miller and her surrender of her purse is reasonably explained only on that basis.

Appellant finally contends that the court should have instructed the jury on stealing from the person. The answer to this contention is found in *State v. Nylon,* 563 S.W.2d 540, 543[9–12] (Mo.App.1978):

"Where there is substantial evidence that the taking of money occurred without violence or putting the victim in fear, the court should submit instructions to the jury allowing them to find defendant guilty of stealing. *State v. Parker,* 324 S.W.2d 717, 722 (Mo.1959). However, fear is presumed where a deadly weapon is used to obtain money. *State v. Keeney,* 425 S.W.2d 85, 89 (Mo.1968); *State v. Ray,* 354 S.W.2d 840, 843 (Mo.1962). Where the state provides evidence of all the elements of robbery, including fear, and defendant presents evidence showing only that he committed no crime, no instruction on stealing is required." *State v. Nylon,* supra, at 543.

In this case, the state offered substantial evidence in proof of the robbery charge. The defense was that appellant did not participate in any taking of Ms. Miller's purse. In such situation, no instruction on stealing from the person was required.

Judgment affirmed.

All concur.